IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

**UNITED STATES OF AMERICA**,
 *Plaintiff,*

v.               Case No. 24-CR-00198-SRB

**DELEON REED**,
 *Defendant.*

## MOTION TO SUPPRESS EVIDENCE

  Deleon Reed moves this Court to suppress the evidence derived from his unlawful arrest on July 19, 2024, and any statements of Mr. Reed subsequent to this unlawful search. The evidence seized includes a holster, a black Glock 22 .40 caliber handgun (serial#MAA017), 21 rounds of ammunition, and a switch. The evidence should be suppressed because the arrest warrant affidavit contains reckless or intentional false statements by the affiant in violation of *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978). The good faith exception does not apply to this violation of the Fourth Amendment to the United States Constitution. In support of this motion, Mr. Reed states the following:

STATEMENT OF FACTS

  On April 11, 2024, Probation Officer Monica Holsteen of the U.S. Probation Office submitted a Violation Report with Warrant Recommended in USA v. Deleon Reed, 4:18-CR-00038-GAF (Doc 94). [1] The application alleged violations of

---

[1] Attached as Exhibit ("Ex.") A.

supervised release including violating the mandatory condition, "You must not commit another federal, state or local crime." Ex. A, p.1. Additionally, the report alleged a violation for owning, possession or having access to a firearm, ammunition, etc. Id. The third violation involved the condition to not communicate or interact with a felon without obtaining permission first. Ex. A, p. 2.

Specifically, the violation report alleged the following:

According to Raytown, Missouri, Police Department (Incident Report 24-0625), on March 11, 2024, at approximately 1:45 am, Raytown, Missouri, police officers responded to the Dirty Bird Bar and Grill in Raytown, Missouri, regarding a shooting where two male parties suffered gunshot wounds. They were struck by gunfire inside of a black, Chrysler 200 sedan, and were transported from the scene in a black Chevrolet Tahoe, where they were dropped off at Research Medical Center. The two victims were later identified as Cedrick Scott and Dontae Strother.

On March 19, 2024, Reed was identified to be involved in the shooting and is a suspect. **He is seen on security video** wearing an orange decorated hoodie, driving a gray and black Dodge Challenger vehicle. The passenger in the vehicle is identified as Antonio Sullivan who is also a suspect. **The video shows** both Reed and the victim's Chrysler vehicle were parked in the Dirty Bird Bar and Grill parking lot. **Reed begins shooting into the Chrysler vehicle until the handgun goes to slide-lock, indicating the gun no longer had ammunition. While Reed is shooting into the vehicle, the driver of the Chrysler, Cedrick Scott, shoots back out of the driver's window.** Reed reverses the car he is driving and hits another car while backing up. Strother was a passenger inside the Chrysler and is seen falling out of the vehicle and moving to the other side of the vehicle. **Gunfire smoke was seen coming from the driver and passenger side of the Challenger vehicle, indicating that both Reed and Sullivan were shooting firearms.** Additionally, .40 Smith and Wesson and .45 Automatic Colt Pistol casings were located in the area of where the Challenger was discharging firearms. The Challenger left the area before law enforcement arrived. The victims suffered injuries from the shooting. Strother sustained a single gunshot wound to his left thigh. Scott's injuries are not described in

the incident report; however, it states that he was intubated and unable to speak when detectives went to interview him at the hospital. Reed has not yet been charged with any new law violations; however, the United States Attorney's Office is investigating this incident and new charges may be forthcoming. Reed remains in the community.

Ex. A, p. 1-2. (emphasis added).

Officer Holsteen declared under penalty of perjury that the information was true and correct. Ex. A, p. 3. Based on the information provided by Officer Holsteen, the Arrest Warrant was approved.

On July 19, 2024, approximately three months later, several officers executed the arrest warrant.[2] The officers watched Mr. Reed enter the New Urban Barber, a business located at 414 NW Englewood in Kansas City, Missouri. As Reed exited the business, these officers descended upon him. Reed went back into the business and was pursued by the officers. He was taken into custody in the business at approximately 2:12 pm. Ex. B, p. 3. At that time, the officers searched Reed and located a holster. Id. The officers located a black Glock 22 .40 caliber handgun approximately 6 to 8 feet from Reed. Id. These items were taken into evidence. Additionally, Reed was taken into custody.

On July 20, 2024, Detective Sandifer began questioning Reed at 12:28 am at the Kansas City Metro Patrol Detention facility where he remained in custody as a result of this arrest. Exhibit C. Sandifer read Reed his Miranda warnings, and Reed waived these rights and provided a statement. Id. Detective Sandifer interrogated Reed about the firearm recovered during the execution of the arrest

---

[2] Ten officers are listed as participating in the arrest warrant execution in Detective Thilges' report. This report is attached as Exhibit B. The returned warrant is found in US v. Deleon Reed, Case No. 4:18-CR-38-01, Doc. 107.

warrant, and Reed admitted to possessing the firearm explaining that he took it from his nephew. He explained that his little nephew got the gun from a guy named Lamar, and he did not want his nephew to have the gun. Id. The questioning ended at 2:09 am. Id.

March 11, 2024, Incident

On March 11, 2024, Raytown Missouri police officers responded to the Dirty Bird Bar and Grill at 6600 Blue Ridge Boulevard for a shots fired call. Ex. C. Investigation revealed two shooting victims. Ex. D. Additionally, Raytown Officer Chris Shrout gathered security videos from Discount Smoke, located at 6612 Blue Ridge Boulevard. Ex. E. Officer Shrout noted that the shooting "suspect walked down the edge of the shopping center and out of view of the camera." Id. at ¶ 3.

In a supplemental report dated March 19, 2024, completed by Robert Fox, a timeline of the events of the night are summarized noting video timestamps. Ex. F. The report states as follows:

> The following events were observed to have occurred at the corresponding timestamps (based upon the timing of incoming 911 calls regarding the shooting, the video timestamp appears to be consistent with the actual incident time. Format is HHMMSS): 011415: Victim Chrysler 200 pulls into parking lot off of Blue Ridge Blvd. Vehicle does not have headlights on. Vehicle can be seen to have two front seat occupants as it drives in front of the bar. Vehicle then proceeds to area of Discount Smokes.
>
> 011741: Gray/black Dodge Challenger turns into parking lot of Dirty Bird (DB) off of northbound Blue Ridge Blvd. Driver can be seen wearing orange decorated hoodie as worn by Deleon Reed, and passenger wearing a black North Face hoodie, as worn by Antonio Sullivan.

4

011838: Challenger makes turn around corner of shopping center and proceeds to the east side of the parking lot and stops. Turns on to SB Blue Ridge Blvd toward area of Discount Smokes.

014009: Suspect exits bar and walks east along the parking lot. Enters vehicle, and leaves parking lot, parking across Blue Ridge Blvd at Rice-Tremonti house.

014435 - Suspect can be seen walking westbound along E 66th St towards Dirty Bird parking lot. Begins walking along the business storefronts on his way back to Dirty Bird.

014545 - victim vehicle and Dodge Challenger are back in the Dirty Bird parking lot (north side) in line to drive in front of the bar (again.)

014647 - Suspect walks up to Chrysler, retrieves handgun and begins shooting into vehicle until handgun goes to slide-lock (likely indicating that the firearm no longer had any ammunition in the magazine, causing the slide to remain locked to the rear) While suspect is shooting into the vehicle, two distinct apparent firearm discharges (shown as two separate projections of what is consistent with the smoke generated by the cartridge's burning powder emanating from the barrel of a firearm) can be seen coming from inside of the Chrysler, indicating that an occupant of the vehicle discharged a firearm. At timestamp 014654 the driver (previously identified as Cedrick Scott wearing ) can be seen pointing what appears to be a pistol out of the driver window.

014655- Challenger reverses and while going backwards (east) strikes the front of a white sedan near the parking lot entrance.

014657 - Dontae Strother falls out of passenger seat of vehicle onto ground and scurries around to other side of vehicle. Suspect stands on front deck of bar and points firearm at Strother as he hides.

014659 - Smoke puffs can be seen emanating from the driver side and passenger side of the Challenger, indicating gunfire originating from the vehicle's occupants. An impact can be seen on the ear (sic) window of the blue Mazda car (later seen to be broken in crime scene photos.) .40S&W and

5

.45ACP casings were located in the area of where the Challenger's occupants were discharging firearms.

014700 - Suspect flees northbound across parking lot,

014719 - Challenger pulls up beside Chrysler before leaving the area.

Ex. F.

The security videos from Discount Smokes reveal three occupants of the Dodge Challenger.[3] At Discount Smoke security timestamp ("DS_") 46:55[4] a person wearing a North Face hooded sweatshirt is seen entering identified by investigators as Antonio Sullivan. At DS_47:53 a person wearing an orange sweatshirt is seen entering the driver's side of the Dodge Challenger. This individual is identified as Deleon Reed by investigators. A third person wearing a grey hooded sweatshirt and gray jeans enters the passenger door and climbs into the back seat of the Challenger at DS_50:10. All three men remain in the car as it is seen driving toward the Dirty Bird Bar and Grill at DS_54:20. At DS_55:03, the person identified as the suspect can be seen walking through the parking lot in a gray and white shirt.

At 01:46:48[5] in the Dirty Bird security video ("Bird_") the suspect is seen walking by the Chrysler, he pulls his weapon and begins shooting into the Chrysler.[6] The Dodge Challenger is seen behind the Chrysler. He is seen shooting

---

[3] This portion of the Discount Smokes security video is submitted as Ex. G.
[4] These time stamps correspond to the Discount Smokes security videos. Officer Shrout notes that the timestamps on the video are about 50 minutes behind the actual time. Ex. E, at ¶ 1.
[5] This timestamp corresponds to the Dirty Bird Security videos. These timestamps appear to accurately reflect the time. Ex. F, at ¶ 1.
[6] This portion of the Dirty Bird security video is submitted as Ex. H

6

until the slide on his gun locks. Bird_01:46:55 At Bird_01:46:56, the suspect aims his gun at the passenger of the Chrysler on the ground. He is now facing toward the area where the Dodge Challenger is located. The Chrysler is seen rolling forward. Bird_01:46:50 – 01:47:00. The Dodge Challenger can be seen backing up to attempt to leave the area. As it is fleeing, smoke appears from the driver's side of the car Bird_01:46:57; however, it is unclear whether this is coming from the backseat passenger in the car. The suspect flees the scene across the parking lot and across the street at Bird_01:44:58.

## ARGUMENTS & AUTHORITIES

I. The arrest warrant was invalid because the affidavit in support of the warrant contained reckless or intentional false statement by the affiant in violation of *Franks v. Delaware*, 438 U.S. 154 (1978), and the remaining content of the affidavit is insufficient to establish probable cause.

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, support by Oath or Affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., Am. IV.

Under *Franks*, evidence may be suppressed where a defendant makes the following showing:

1) that a false statement knowingly and intentionally, or with reckless

7

disregard for the truth, was included in the affidavit,[7] and

    2) that the affidavit's remaining content is insufficient to establish probable cause. [8]

To obtain a *Franks* hearing, "a defendant must make 'a substantial preliminary showing' that an affidavit contains an intentional or reckless false statement or omission necessary to the probable cause finding." *United States v. Bradley*, 924 F.3d 476, 481 (8th Cir. 2019) (citation omitted). This requirement "is not lightly met." *United States v. Butler*, 594 F.3d 955, 961 (8th Cir. 2010) "[Defendant]'s attack on the warrant applications "must be more than conclusory"; he must allege a "deliberate falsehood or [] reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *United States v. Williams*, 669 F.3d 903, 905 (8th Cir. 2012) (citing, among others, *Franks*, 438 U.S. at 171).

"Because it is the magistrate who must determine independently whether there is probable cause, *Johnson* v. *United States*, 333 U.S. 10, 13-14 (1948); *Jones* v. *United States*, 362 U.S. 257, 270-271 (1960), it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or recklessly false statement, were to stand beyond impeachment." *Franks v. Delaware*, 438 U.S. 154, 165 (1978). The deliberately false or reckless inclusion of perceptions of sight, smell, and sound – given the court's reliance on

---

[7] *Franks*, 438 U.S. at 156.
[8] *Franks*, 438 U.S. at 171-172.

officers' experience – is "unforgiveable." *Hervey v. Estes*, 65 F.3d 784, 789-91 (9th Cir. 1995) (applying Franks to false statements regarding officers' experience and the smell of a meth lab).

A. The affidavit in this matter included false statement(s) knowingly and intentionally, or with reckless disregard for the truth.

The affidavit in this matter contained several false statements. Most glaringly, the report states that "Reed begins shooting into the Chrysler vehicle until the handgun goes to slide-lock, indicating the gun no longer had ammunition. While Reed is shooting into the vehicle, the driver of the Chrysler, Cedrick Scott, shoots back out of the driver's window." Ex. A, p. 1-2. A review of the police reports makes clear this is a false statement.

In his report, Officer Shrout describes the events and notes that the suspect approached the scene on foot Ex. E. Officer Fox's report summarizes the security videos. Fox describes the actions of the occupants of the Chrysler, the occupants of the Dodge Challenger, and the actions of the suspect. Ex. F. He describes the suspect exiting the bar (Bird_014009), parking his car across the street and walking back to the area on foot (Bird_144335). Officer Fox describes the Chrysler and Dodge Challenger driving to the entrance of the Dirty Bird in the parking lot as the suspect approaches the Chrysler on foot (Bird_144545 and Bird_144647). "Suspect walks up to Chrysler, retrieves handgun and begins shooting into vehicle until handgun goes to slide-lock (likely indicating that the firearm no longer had any ammunition in the magazine, causing the slide to

remain locked to the rear)" (Bird_014647). Finally, the suspect flees on foot across the parking lot. (Bird_014700). Reading the reports summarizing the videos clearly establishes that the person shooting into the Chrysler with a gun that goes into the slide lock position in the police reports is not Reed.

Additionally, the security videos shows that the person shooting at the occupants of the Chrysler is not Reed. The violation report describes the security video beginning the descriptions of events with "The video shows…". Ex. A, p. 2 at ¶ 2. This creates the impression that she has reviewed the videos and is accurately describing the contents. A review of the videos incontrovertibly conflicts with the description of events in the violation report.

Next, the violation report describes two passengers in the Dodge Challenger. A review of the video evidence establishes three passengers in the Dodge Challenger. This is important because the report then alleges that puffs are seen coming from the driver and passenger sides of the Dodge Challenger, "indicating that both Reed and Sullivan were shooting firearms." Ex. A, p. 2 at ¶ 2. This statement ignores the fact that a third person was present in the car. Additionally, the police reports associated with the incident do not conclude that Reed and Sullivan were shooting. The report more carefully states that the smoke indicates shots coming from occupants in the car. Ex. F.

These factual misstatements are material to the issuance of the warrant. Because Reed is not the suspect who shot the occupants of the Chrysler, the allegations that he violated supervised release by committing a new crime and

10

possessed a firearm are questionable. The allegation that Reed was shooting out of the car is also dubious. The car had three occupants, and Reed was identified as the driver wearing a bright orange hooded sweatshirt. At the time the puffs of smoke are coming out of the car, the driver is backing up the vehicle in an attempt to escape the gunfire. The more likely explanation it that the backseat passenger is firing at the person who shot their two friends and was aiming at one of the victims as he lay helplessly on the ground.

These factual misstatements recklessly disregard the truth, thus misleading the issuing judge. The accurate information was contained in the police reports. Security videos show the events in clear detail. The report implies a careful reading and a review of the videos. The report is contradicted by both.

B. The affidavit's remaining content is insufficient to establish probable cause

All of the allegations in the report relate to the events of March 11, 2024. If you remove the inaccurate information, the alleged violations for committing a federal, state or local crime would not be established. Additionally, the report fails to establish that he owned, possessed or had access to a firearm, ammunition, destructive device or dangerous weapon, so this violation would also fail. The third violation alleged that Reed interacted with someone he knew to be convicted of a felony without first getting permission. The person he allegedly interacted with is his brother, Antonio Sullivan. This violation, alone, would not rise to the level of issuing a warrant for Reed's arrest. The report notes that Reed had no previous violation in this supervision. Ex. A, p. 2.

11

Case 4:24-cr-00198-SRB    Document 19    Filed 03/24/25    Page 11 of 16

II. The Government cannot rely on exceptions to excluding evidence unconstitutionally obtained pursuant to *United States v. Leon*, 468 U.S. 897 (1984), because Leon expressly excepts from the scope of its holding warrants that are challenged under *Franks v. Delaware*, 438 U.S. 154 (1978). 468 U.S. at 923.

The good faith exception to the exclusionary rule set forth in *Leon* is inapplicable: "(1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid." *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011).

For the reasons asserted in Section I above, Reed asserts that the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge. As such, the *Leon* exception will not apply.

III. Any statements made by Defendant were coerced and in violation of the Fifth Amendment of the United States Constitution and are fruit of the poisonous tree. *Wong Sun v. United States*, 371 US 471 (1963).

The Court in *Wong Sun* discussed the danger of failing to suppress evidence when no reasonable suspicion or probable cause is present:

> A contrary holding here would mean that a vague suspicion could be transformed into probable cause for arrest by reason of ambiguous conduct which the arresting officers themselves have provoked. Cf. *Henry v. United States*, 361 U. S. 98, 104. That result would have the same essential vice as a proposition we have consistently rejected—that a search unlawful at its inception may be validated by what it turns up. *Byars v. United States*, 273 U. S. 28; *United States v. Di Re*, 332 U. S. 581, 595.

Reed was continuously held in custody from the time of his seizure on July 19, 2024 around 2:12 pm[9] until the interrogation began at 12:38 am on the morning of July 20, 2024. Ex. B, p. 5. The questioning centered around the evidence seized during the execution of the arrest warrant. Id. The officers questioned him about the firearm and holster, items that they would not have questioned him about absent the arrest warrant execution. Therefore, but for the illegal arrest warrant, this questioning would not have occurred. This establishes the factual nexus between the evidence to be suppressed and the constitutional violation. *United States v. Marasco*, 487 F.3d 543, 547 (8th Cir. 2007)

> "[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" *Segura v. United States*, 468 U.S. 796, 804, 104 S. Ct. 3380, 82 L. Ed. 2d 599 (1984) (citations omitted). Additionally, "[v]erbal statements obtained as a result of a Fourth Amendment violation are as much subject to the exclusionary rule as are items of physical evidence discovered during an

---

[9] Ex. B, p. 3.

13

Case 4:24-cr-00198-SRB    Document 19    Filed 03/24/25    Page 13 of 16

illegal search." *United States v. Yousif*, 308 F.3d 820, 832 (8th Cir. 2002) (citing *Wong Sun v. United States*, 371 U.S. 471, 485, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963))."

*United States v. Riesselman*, 646 F.3d 1072, 1078-79 (8th Cir. 2011)

In determining whether statements provided are voluntary to purge the taint of the illegal search, the court considers four factors:

1. the giving of Miranda warnings,

2. the "temporal proximity" of the illegal search and the statements made,

3. the "presence of intervening circumstances," and

4. "the purpose and flagrancy of the official misconduct." *Riesselman*, 646 F.3d at 1080, citing *United States v. Lakoskey*, 462 F.3d 965, 975 (8th Cir. 2006).

In this case, Miranda warnings were given to Reed. Ex. B, p. 5, ¶ 1. This occurred after the illegal arrest but before Reed's statement. As such this factor weighs in the government's favor. The temporal proximity factor weighs in favor of the government. Approximately 10 hours lapsed between the initial arrest and the interrogation. Intervening circumstances weigh in favor of the defense. Reed had been held in custody on an investigative hold[10], was unclear why he was arrested, and was interrogated just after midnight. The purpose and flagrancy of the violation weigh in favor of the defense. The unconstitutional arrest of Reed is the only reason the questioning occurred. The violation in this case is so egregious that it compels exclusion.

---

[10] Ex. B, p. 3, ¶ 5.

Because law enforcement did not have a constitutionally valid arrest warrant, the arrest, seizure of his person, and search his person, his subsequent statement, the gun, ammunition, switch, and holster seized as evidence were obtained in violation of Mr. Reed's rights to be free from unreasonable search and seizure, to due process of law, and to counsel as guaranteed to him by the Fifth and Sixth Amendments to the United States Constitution.

CONCLUSION

Mr. Reed's Fourth Amendment rights were violated when officers conducted an unreasonable seizure of his person, and search and seizure of several items of evidence. This search was not supported by a constitutionally valid search warrant and does not fall within the good-faith exception to the exclusionary rule. The warrant was obtained in violation of *Franks v. Delaware*. Therefore, Mr. Reed requests this Court to suppress all evidence relating to this illegal arrest, search and seizure on July 19, 2024, to suppress any subsequent statements and for whatever relief this Court deems just and proper.

Respectfully Submitted,

SANDAGE LAW LLC

/s/ Laura O'Sullivan
Laura O'Sullivan, MO #41318
1600 Genessee Street, Suite 662
Kansas City, MO 64102
phone 816.753.0800
fax 816.735.4602
email laura@sandagelaw.com

ATTORNEY FOR DEFENDANT

**CERTIFICATE OF SERVICE**

    On March 24, 2025, I served this document by depositing an electronic copy of it in the Court's electronic filing system, which shall distribute notice to all attorneys of record.

                                        / s/ Laura O'Sullivan
                                        Laura O'Sullivan